UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA SHRADER, | No. 2:18-cv-00014-KJM-CKD |
| Plaintiff, | |
| v. | ORDER |
| PAPÉ TRUCKS, INC., | |
| Defendant. | |

In this action arising out of defendant's repair of plaintiff's truck, defendant moves for summary judgment of plaintiff's sole negligence claim. Defendant also moves to exclude or strike two of plaintiff's experts and moves to exclude plaintiff's causation expert. For the reasons below, the court DENIES defendant's motions.

I.  BACKGROUND

The following facts are undisputed, except where noted: Plaintiff Juanita Shrader was a truck driver for Interstate Distributor Company from March 2015 until December 1, 2015. Statement of Undisputed Facts ("SUF") 10, ECF No. 27-1. On November 2, 2015, while on duty, plaintiff reported to her employer that "fuel" was leaking from the "turbo" into the truck through the vents. SUF 16. Plaintiff testified this problem had been occurring "off and on" since

October, and continued into mid-November, though she was unable to estimate the percentage of time the problem occurred.  SUF 23, 25.  Between October 2015 and November 23, 2015, plaintiff experienced headaches, as well as "a little heavy breathing," which she attributed both to her cigarette smoking and to the smoke leaking into the cab of the truck.  SUF 28.  Plaintiff also has a history of asthma, SUF 6, and possibly chronic obstructive pulmonary disease, SUF 5 (disputed).

On November 16, 2015, plaintiff took the truck to be inspected by a repair facility in French Camp, California, owned by defendant Papé Trucks, Inc.  SUF 18.  The next morning, plaintiff left the truck with defendant to repair, *inter alia*, "smoke inside the cab [that] smell[ed] like fuel or oil."  SUF 19–20.  On November 23, 2015, plaintiff retrieved the vehicle.  SUF 29.  Due to the Thanksgiving holiday, plaintiff did not drive the truck from November 26 through November 28, 2015.  SUF 30.

Though the evidence is unclear as to timing, at some point after this, while plaintiff was driving near Corning, California, plaintiff again reported the "truck was smoking" and her employer told her to "try and get it up here to the yard."  SUF 31–34.  Plaintiff then drove the truck from Corning to Renton, Washington.  SUF 33.  Plaintiff did not the drive the truck after December 1, 2015, SUF 42, but spent time in the truck between December 4 and 6, SUF 55.  On December 6, 2015, emergency responders were dispatched to plaintiff's truck, *see* SUF 63, after she suffered what plaintiff's expert calls an acute respiratory failure, Sobol Report at 46, and possibly became unconscious in her truck, SUF 60 (disputed).  According to plaintiff, she has "16 different injuries" as a result, "including pneumonia."  SUF 64.

On November 6, 2017, plaintiff brought a negligence claim against defendant Papé Trucks in San Joaquin County Superior Court, which was timely removed to this court.  Not. of Removal, ECF No. 1.  Defendant has filed three motions currently pending before the court:  (1) a motion to strike or exclude experts Dr. Sobol and Dr. Klassen, Mot. to Strike, ECF No. 25; (2) a motion to exclude the causation opinions of Dr. Sobol, Mot. to Exclude ("*Daubert* Mot."), ECF No. 27; and (3) a motion for summary judgment, Mot. for Summ J. ("MSJ"), ECF No. 27.  The court addresses each below.

2

## II.     MOTION TO EXCLUDE OR STRIKE EXPERTS

Defendant moves to strike or exclude plaintiff's experts Dr. Sobol and Dr. Klassen on the basis plaintiff improperly classified them as non-retained experts rather than "retained experts"; therefore, defendant argues, plaintiff has not complied with the Rule 26(a)(2)(B) reporting requirements for retained experts. Mot. to Exclude at 3. Defendant asks the court to exclude the experts from trial and as support for plaintiff's opposition to defendant's summary judgment motion under Rule 37(c)(1).[1] *Id.* at 4. Plaintiff opposes, ECF No. 26, and defendant has replied, ECF No. 30.

Dr. Sobol and Dr. Klassen are neither traditional "retained" experts, hired by plaintiff to develop a report specifically for the litigation at hand, nor are they traditional "non-retained" experts, such as a treating physician. *See Cantu v. United States*, No. CV 14-00219 MMM (JCGx), 2015 WL 12743881, at *3 (C.D. Cal. Apr. 6, 2015) (reviewing distinction between retained experts and non-retained experts who are treating physicians). Rather, Dr. Sobol and Dr. Klassen are California Workers' Compensation Appeal Board Medical-Legal Agreed Medical Evaluators ("AMEs"), who were appointed as provided by the California Labor Code to formulate opinions for use in plaintiff's separate, but related, workers' compensation dispute. Mot. to Exclude at 3; Opp'n to Mot. to Exclude at 2 (citing Cal. Labor Code § 4062.2).

As evidenced by the parties' briefing, there is limited authority addressing whether AMEs are considered retained or non-retained experts when they are used as experts in litigation other than the original workers' compensation dispute. *See* Mot. to Exclude at 5 ("Defendant has not been able to find a precedent specifically on-point where a workers' compensation AME is permitted to testify as 'non-retained.'"); Opp'n to Mot. to Exclude at 2 ("There is not authority that states that a workers compensation [AME] is a 'retained expert' for purposes of FRCP 26."). The Ninth Circuit has provided some relevant guidance in *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011), in holding that a treating physician, usually a

---

[1] "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . . ." Fed. R. Civ. P. 37(c)(1).

3

1  "non-retained" expert, becomes a "retained" expert subject to Rule 26(a)(2)(B) requirements
2  when his testimony goes beyond "opinions formed during the course of treatment" by reviewing
3  external information provided by plaintiff's attorney.[2] *Id.* at 825–26.  District courts have
4  interpreted this holding to mean "the critical distinction between retained and non-retained
5  experts is the nature of the testimony the expert will provide, and whether it is based only on
6  percipient knowledge or on information reviewed in anticipation [of] trial." *Cantu*, 2015 WL
7  12743881, at *4–5; *see also Tarter v. Throne Law Office, P.C.*, No. CV 17-123-BLG-SPW, 2019
8  WL 609337, at *3 (D. Mont. Feb. 13, 2019); *Trulove v. D'Amico*, No. 16-CV-050 YGR, 2018
9  WL 1090248, at *3 (N.D. Cal. Feb. 27, 2018); *United States v. Sierra Pacific Industries*, No. CIV
10 S–09–2445 KJM EFB, 2011 WL 2119078, at *4 (E.D. Cal. May 26, 2011); *but see Moniz v. City
11 of Delano, California*, No. 1:13-CV-00093-JLT, 2015 WL 128124, at *5 (E.D. Cal. Jan. 8, 2015)
12 (finding AMEs not retained where defendant did not meet its burden to demonstrate they were
13 "retained").  In *Cantu*, the court specifically analyzed the circumstances relating to an AME
14 expert and found the expert was "non-retained," because the expert's testimony was "limited to
15 observations and opinions formed at the time of his [] examination" of plaintiff.  *Cantu*, 2015 WL
16 12743881 at *5.

17      Here, in reaching their opinions contained in their expert reports, Dr. Sobol and
18 Dr. Klassen rely on more than just their percipient observations from examining plaintiff; the
19 reports were prepared for litigation purposes.  *See* Sobol Decl. ¶ 13, ECF No. 34-1(explaining his
20 opinions are based on "the facts as they were presented to me by Ms. Shrader and in her medical
21 records as well as the relevant scientific literature cited above"); Klassen Report, ECF No. 25-4,
22 at 2 (explaining he prepared report after evaluating plaintiff and reviewing her medical records

---

[2] *Goodman* was decided before the 2010 Amendment to Rule 26(a)(2).  "The 2010 Amendments to Rule 26(a)(2) now mandate non-retained experts, like treating medical providers who offer opinions based on their 'knowledge, skill, experience, training or education' under Fed. R. Evid. 702, 703 or 705 to make the disclosures required by Rule 26(a)(2)(C)." *Dixon v. Legacy Transportation Sys., LLC*, No. 215CV01359JADPAL, 2017 WL 4004412, at *8 (D. Nev. Sept. 11, 2017).  However, "[t]he reporting obligations are less onerous than the ones required by Rule 26(a)(2)(B) for retained experts." *Id.*  To be clear, defendants only argue plaintiff has not complied with the "more onerous" Rule 26(a)(2)(B) report requirements.  Mot. to Strike at 1.

and report is "intended for medical-legal purposes only"). As such, these doctors are properly considered "retained" experts, subject to the disclosure requirements of Rule 26(a)(2)(B), which requires plaintiff to disclose, among other things, a written report, a list of any exhibits or documents relied on by the expert, the expert's qualifications, and a list of cases in which the expert has previously testified. *See* Fed. R. Civ. P. 26(a)(2)(B).

Defendant conceded at hearing it has received written reports from Dr. Sobol and Dr. Klassen before the Rule 26 disclosures deadline, and the only prejudice it suffered was from being unable to use Dr. Sobol's full CV and list of prior testimony at Dr. Sobol's deposition. Plaintiff argues this delay is harmless, because defendant has since been given an additional opportunity to depose Dr. Sobol. Joint Status Rep. ("JSR"), ECF No. 37, at 2 (plaintiff representing she has made Dr. Sobol available for an additional deposition after his declaration in support of plaintiff's summary judgment opposition was disclosed). Defendant agreed at hearing that any prejudice would be cured by an additional, four hour deposition of Dr. Sobol. Within fourteen days of this order, plaintiff SHALL make all necessary additional disclosures in compliance with Rule 26(a)(2), including disclosing Dr. Sobol's full CV and prior testimony, to the extent she has not already done so. Thereafter, the parties SHALL meet and confer regarding the timing and duration of Dr. Sobol's deposition, which shall last no longer than four hours.

In light of this concession by defendant at hearing, the court finds plaintiff's failure to disclose Drs. Sobol and Klassen is "harmless" under Rule 37(c)(1) and therefore, the court will consider their reports for the purpose of summary judgment. *See* Fed. R. Civ. P. 37(c)(1). The court DENIES the motion to strike and considers their reports below.

III.   *DAUBERT* MOTION TO EXCLUDE CAUSATION OPINIONS OF DR. SOBOL

In conjunction with its motion for summary judgment, defendant filed a motion to exclude Dr. Sobol's causation opinions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (*Daubert I*). Daubert Mot. Plaintiff opposes, ECF No. 34, and defendant has replied, ECF No. 39. Defendant does not attack the relevance of Dr. Sobol's testimony, but rather its reliability.

/////

5

A. <u>Legal Standard</u>

Under Federal Rule of Evidence 701, a witness is authorized to provide opinion testimony that is "(1) rationally based on the witness's perception, and (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701. If an opinion witness's testimony is based on "scientific, technical, or other specialized knowledge," admissibility of the opinion is governed by Rule 104—a general rule regarding preliminary questions a court must address—and Rule 702, the rule governing expert opinions. Fed. R. Evid. 104, 702. Taken together, Rules 104 and 702 focus on whether an expert witness is qualified to testify, whether such testimony is relevant and whether such testimony is reliable. *Id.*; *Daubert I*, 509 U.S. at 594–95.

Scientific evidence is reliable if the principles and methodology used by the expert proffering it are supported by "appropriate validation" or "good grounds." *Daubert* I, 509 U.S. at 590–91. In *Daubert I*, the Supreme Court provided a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including (1) whether the theory or methodology can be and has been tested; (2) whether "the theory or technique has been subjected to peer review and publication;" (3) the "known or potential rate of error;" (4) the "existence and maintenance of standards controlling" the methodology's operation; and, finally, (5) general acceptance in the relevant community. *Id.* at 593–94.

*Daubert II* elaborated on the *Daubert I* factors, clarifying that experts may demonstrate scientific reliability of a theory or methodology by showing "the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication." *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1318 (9th Cir. 1995). Alternatively, testifying experts may show the validity of a theory by explaining "precisely how [the experts] went about reaching their conclusions and point[ing] to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have

/////

6

1 followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in
2 their field." *Id.* at 1319.

3 In determining reliability, "the expert's bald assurance of validity is not enough,"
4 *id.* at 1316, a rule meant to ensure "junk science" is kept out of the federal courtroom. *Id.* at 1321
5 n.18. Rather, "the party presenting the expert must show that the expert's findings are based on
6 sound science, and this will require some objective, independent validation of the expert's
7 methodology." *Id.* at 1316. The trial court is accorded wide discretion when acting as a
8 gatekeeper for the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*,
9 526 U.S. 137, 151–52 (1999).

10 "Vigorous cross-examination, presentation of contrary evidence, and careful
11 instruction on the burden of proof are the traditional and appropriate means of attacking shaky but
12 admissible evidence," *Daubert I*, 509 U.S. at 596, and the court may fulfill its gatekeeping role
13 with a dedicated hearing allowing for voir dire of the expert, *In re Hanford Nuclear Reservation*
14 *Litig.*, 292 F.3d 1124, 1138 (9th Cir. 2002). For the following reasons, the court DENIES
15 defendant's *Daubert* motion without prejudice. Should defendant wish to renew this *Daubert*
16 challenge at trial, it should alert the court so that it may schedule limited voir dire outside the
17 presence of the jury before Dr. Sobol is called to testify.

18     B.  Discussion

19 First, defendant argues Dr. Sobol's causation opinion lacks "sufficient facts or
20 data" to support it, because plaintiff could not provide him with an estimate of her exposure to
21 diesel fumes. Mot. at 8 (citing Fed. R. Evid. 702(b)). Second, defendant argues the opinion lacks
22 "sufficient facts or data" because plaintiff did not provide Dr. Sobol with air quality data from
23 testing of the subject truck. *Id.* Finally, defendant argues Dr. Sobol "did not follow a toxicology
24 methodology," particularly because he did not offer an opinion of what constitutes a "minimum
25 toxic dose" or "minimum exposure time" to cause plaintiff's injury. *Id.* at 10–11 (citing
26 *Hendricksen v. Conoco Phillips Co.*, 605 F. Supp. 2d 1142, 1157 (E.D. Wa. 2009)).

27 The first two of these arguments rely on the premise that Dr. Sobol's opinion as to
28 specific causation is unreliable under Rule 702 if he formed the opinion without knowing

1  plaintiff's amount of exposure to diesel fumes. In making this argument, defendant relies on
2  *Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006 (E.D. Wash. 2010), *aff'd*, 438 F. App'x
3  607 (9th Cir. 2011) and *Hendricksen v. Conoco Phillips Co.*, 605 F. Supp. 2d 1142, 1157 (E.D.
4  Wa. 2009). However, neither case holds that a physician expert like Dr. Sobol cannot reliably
5  form a causation opinion in a toxic tort case without information on plaintiff's precise exposure.

6  Defendant cites *Newkirk* for the proposition that expert testimony on general and
7  specific causation in a toxic tort case must be excluded when "the expert did not reliably assess
8  what a toxic dose would be and what exact dose the plaintiff was subjected to." *Daubert* Mot. at
9  7 (citing *Newkirk,* 727 F. Supp. 2d at 1018–30). However, in *Newkirk*, a toxic tort case arising
10 from plaintiff's prolonged exposure to a chemical in microwave popcorn, the court found the
11 expert's causation opinion was not supported by sufficient data, because the primary study relied
12 upon drew conclusions about exposure to "qualitatively different" substances than those to which
13 the plaintiff was exposed and the exposure of the study's subjects exceeded that of household
14 users like plaintiff "by orders of magnitude." *Newkirk*, 727 F. Supp. 2d at 1017 (citation
15 omitted). Contrary to defendant's assertion, the *Newkirk* court did not require a specific exposure
16 measurement. Rather, it found the studies relied upon must lead logically to the expert's
17 conclusion. Defendant does not identify any of Dr. Sobol's referenced studies that suggest his
18 general causation conclusion, that diesel fumes can cause pneumonia, is unreliable. *See* Sobol
19 Report, ECF No. 35-4, at 48–50 (reviewing scientific studies and concluding exposure to diesel
20 exhaust can lead to pneumonia).

21 Similarly, defendant cites *Hendricksen v. Conoco Phillips Co.*, 605 F. Supp. 2d
22 1142, 1157 (E.D. Wa. 2009), for the proposition that a causation expert in a toxic tort case "*must*
23 identify a 'toxic dose' and what 'toxic dose' the plaintiff was subjected to." *Daubert* Mot. at 6
24 (emphasis in original). However, the *Hendricksen* court further explained:

> [I]t is not always necessary for a plaintiff to quantify exposure levels precisely or use the dose-response relationship, provided that whatever methods an expert uses to establish causation are generally accepted in the scientific community. While precise or exact information concerning dosage or the dose-response relationship is not always required, the boundaries of allowable expert testimony

8

> are not so wide as to permit an expert to testify as to specific causation without having any measurements of a plaintiffs' exposure to the allegedly harmful substance.

*Hendricksen*, 605 F. Supp. 2d at 1157 (citing *Hardyman v. Norfolk & Western Ry. Co.*, 243 F.3d 255, 264 (6th Cir. 2001)); *see also Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1059–60 (9th Cir. 2003) ("While 'precise information concerning the exposure necessary to cause specific harm is beneficial, such evidence is not always available, or necessary, to demonstrate that a substance is toxic.'") (alteration and internal citations omitted).

The Ninth Circuit has approved the general methodology termed "differential diagnosis" for demonstrating specific causation, *see Clausen*, 339 F.3d at 1061, *as amended on denial of reh'g* (Sept. 25, 2003), but district courts in the Circuit have noted this method alone is not sufficient to demonstrate general causation, *Hendricksen*, 605 F. Supp. 2d at 1158 ("[D]ifferential diagnosis cannot demonstrate general causation, because it assumes, without proving, that all of the potential causes considered are capable of causing the condition at issue."). "Differential diagnosis is the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings." *Clausen,* 339 F.3d at 1057 (internal quotation marks and citation omitted). "A reliable differential diagnosis . . . generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely" and typically relies on "physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests." *Id.* (citation omitted). One district court, for instance, excluded a differential diagnosis-based expert report for lack of reliability where the expert did not consider alternative causes of the individual's symptoms, failed to cite any specific studies to support causation, and failed to rely on data "particular to Plaintiff." *Dominique v. Holland Am. Line, N.V.*, No. C12-78RSL, 2013 WL 5437436, at *4 (W.D. Wash. Sept. 27, 2013). That court also criticized the expert for failing to "attempt to determine Plaintiff's level of exposure or her particular tolerance for exposure." *Id.*

9

Dr. Sobol's report relies on plaintiff's testimony regarding her exposure, her medical history, Dr. Sobol's own examination of plaintiff, and scientific studies linking diesel fumes to respiratory symptoms like plaintiff's. *See* Sobol Report at 17, 45–46, 48–49. He concludes:

> The description and sequence of [the drive and plaintiff's subsequent illness] is such as to render it likely that the fumes, smoke, and particulate matter that she was exposed to in the course of her driving in early December rendered her already compromised pulmonary system more susceptible to the eventual respiratory failure and collapse which occurred on 12/6/15 specifically as a result of exposure to diesel fuel fumes and diesel exhaust fumes. . . . It appears likely or at least more likely than not, that the exposure to the apparent heavy concentration of exhaust which Ms. Shrader experienced in the cab of her truck, at least up to 12/2/15, rendered her lungs more susceptible to the occurrence of infection with H. influenzae, which resulted in the H. influenzae pneumonia which she subsequently developed within the next several days, as well as worsening of her chronic obstructive pulmonary disease, thus leading to her respiratory collapse and requirement for hospitalization on 12/6/15.

*Id.* at 48–49. Dr. Sobol's report utilizes a sound "differential diagnosis" methodology, and does not suffer from the weaknesses described in *Dominique*. His conclusion is not formed without "any measurement" of plaintiff's exposure to diesel fumes. *See Hendricksen*, 605 F. Supp. 2d at 1157. Rather, Dr. Sobol relies on "the facts as they were presented to [him] by Ms. Shrader," including a deposition of plaintiff conducted in May 2017 in which plaintiff describes, in estimated terms, her exposure to the fumes. *See* Sobol Decl. ¶ 13; Sobol Report at 27–28 (recounting plaintiff's description of the "smoke" coming into the truck, occurring "off and on" since August and for an entire eleven-hour drive). He relies on plaintiff's description of her exposure to the fumes and estimates her particular susceptibility to such an exposure based on her "extensive" medical history and his own physical examination of her. Dr. Sobol also considers other causes of plaintiff's symptoms, namely her history of smoking, and gives them due weight. *See* Sobol Report at 52 (assessing two-thirds of plaintiff's condition was due to her longstanding cigarette smoking). That Dr. Sobol does not have an exact measurement of plaintiff's exposure or

a minimum toxic dosage does not render the report unreliable under *Daubert*, and the court declines to exclude it on that basis.

Furthermore, defendant offers no authority to suggest Dr. Sobol is required to follow a specific "toxicology methodology," despite being a medical expert, not a toxicologist, simply because this is a toxic tort case. *See Daubert* Mot. at 9–11. Plaintiff's lack of a toxicology expert may affect whether plaintiff ultimately is able to meet her burden of proof, not whether Dr. Sobol's expert testimony itself is reliable under *Daubert*.

For these reasons, the court denies the motion without prejudice, subject to renewal at trial.

IV.     MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on plaintiff's sole negligence claim. MSJ, ECF No. 27. Plaintiff opposes, Opp'n, ECF No. 35, and defendant has replied, Reply, ECF No. 39. In its reply, defendant makes several evidentiary objections the court must address before analyzing the substance of defendant's motion.

A. Defendant's Evidentiary Objections

Defendant first challenges the qualifications of plaintiff's expert on duty of care, Paul Herbert, arguing he lacks the requisite experience as a mechanic to form an opinion on the standard of care that applied to defendant when repairing the subject truck. *See* Reply at 6. As explained above, district courts act as gatekeepers with respect to expert testimony and are responsible for ensuring that "any and all scientific testimony or evidence admitted is not only relevant but reliable." *Tressler v. BNSF Ry. Co.*, No. CV-10-188-RMP, 2012 WL 315402, at *2 (E.D. Wash. Feb. 1, 2012) (quoting *Daubert I*, 509 U.S. at 589)). Where, as here, a party offers an individual as an expert in the industry "whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind [the testimony]," the traditional *Daubert* factors applied to a scientific method, such as whether the theory or technique has been subjected to peer review, do not apply. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted). Nonetheless, the court is required to "probe[] the extent of [the expert's] knowledge and experience" to determine whether his testimony is relevant and reliable.

11

*Id.*; *see also Kumho Tire,* 526 U.S. at 150 ("In [some] cases, the relevant reliability concerns may focus upon personal knowledge or experience.") (internal citations omitted).

Plaintiff argues Herbert "has 40 years of experience in the field of commercial motor vehicle equipment and maintenance standards" and is therefore qualified to opine on the standard of care expected of a truck service and repair business. Opp'n at 4 (citing Herbert Decl. ¶¶ 2–6, ECF No. 35-2). Contrary to defendant's assertion, an expert is not necessarily unqualified to opine on the standard of care for a mechanic simply because he does not have experience as a mechanic. In *MJC Supply, LLC v. Scottsdale Ins. Co.*, No. CV 18-1265 RSWL-SK, 2019 WL 2501480 (C.D. Cal. June 16, 2019), the court analyzed a similar challenge to the qualifications of plaintiff's expert, who was to opine on the standard of care of claims adjusters in the insurance industry. *Id.* at *2. Defendant argued the expert was unqualified, because he had no experience as a claims adjuster. *Id.* The court rejected this argument, finding the expert's relevant experience, including his experience as an attorney representing and advising insurance carriers, experience as a provider of continuing education seminars on insurance claims, and his experience providing regulatory testimony to the National Association of Insurance Commissioners was sufficient to render him an expert on claims handling. *Id.* (citing, inter alia, *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) ("Rule 702 'contemplates a *broad conception* of expert qualifications.'" (emphasis in original)); *id.* n.5. Similarly, Herbert has experience as the Assistant Director of Safety and Maintenance Activities for the California Trucking Association, overseeing educational events for members of the trucking industry. Herbert Decl. ¶ 4. He also has experience administering health and safety management programs for Kings County Truck Lines and, as the Director of Western Motor Carrier Safety Institute, has "provided safety, health and compliance consulting services to numerous trucking companies." *Id.* ¶¶ 5–6. Herbert has sufficient relevant experience to opine as an expert on the standard of care in the trucking industry for safety-related maintenance and repairs. His lack of direct experience as a mechanic provides grounds for vigorous cross-examination and ultimately it will be for the jury to assign appropriate weight to his testimony.

/////

Second, defendant challenges the admissibility of plaintiff's toxicology expert, Dr. Kleinman, arguing his calculations regarding plaintiff's exposure time and quantity were disclosed for the first time in his declaration in support of plaintiff's summary judgment opposition, and are therefore improper. MSJ Reply at 3–4 (citing Kleinman Decl. ¶ 7, ECF No. 35-3). Furthermore, defendant argues the calculations are not based on any reliable data. *Id.* Given the late disclosure, the court disregards Dr. Kleinman's calculations for the purposes of summary judgment, without prejudice to further motion practice regarding its admissibility at trial.

B. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law

---

[3] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

1  will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48
2  (emphasis in original).

3   In deciding a motion for summary judgment, the court draws all inferences and
4  views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at
5  587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a
6  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
7  issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*
8  *Co.*, 391 U.S. 253, 289 (1968)).

9   The Supreme Court has taken care to note that district courts should act "with
10 caution in granting summary judgment," and have authority to "deny summary judgment in a case
11 where there is reason to believe that the better course would be to proceed to a full trial."
12 *Anderson*, 477 U.S. at 255.  A trial may be necessary "if the judge has doubt as to the wisdom of
13 terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d
14 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)).
15 This may be the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab.,*
16 *Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting
17 *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir.
18 2001).

19     C. DISCUSSION

20   To succeed on her negligence claim at trial, plaintiff must establish four elements:
21 (1) duty, (2) breach, (3) causation and (4) damages. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th
22 Cir. 2003) (citing *Martinez v. Pacific Bell,* 225 Cal. App. 3d 1557 (1990)).  Defendant's motion
23 for summary judgment attacks two elements of plaintiff's negligence claim: breach of duty and
24 causation.

25     1. Breach of Duty

26   At the heart of the parties' dispute over defendant's alleged breach is the question
27 whether defendant's technician acted within the standard of care when he repaired the first leak
28 he detected, in the "fuel doser line," but did not search for or locate the second leak in the "turbo

1 diffuser clamp," later located by a third-party. *See* Mot. at 12–13. Defendant offers expert
2 testimony from a diesel mechanic that shows defendant's conduct fell within the applicable
3 standard of care for an automobile repair shop. *Id.* at 13–14 (citing Bradshaw Decl. ¶¶ 2–3, 8–11,
4 ECF No. 27-2). Plaintiff cannot rebut this evidence, defendant argues, because plaintiff has not
5 retained an appropriate expert on the standard of care. Mot. at 14. In opposition, plaintiff offers
6 its expert, Paul Herbert, who "has 40 years of experience in the field of commercial motor vehicle
7 equipment and maintenance standards." Herbert Decl. ¶¶ 2–6. In his report, Herbert states: "The
8 industry standard of care required Papé Kenworth to have more carefully and thoroughly
9 evaluated the exhaust system on Ms. Shrader's tractor prior to returning it to her." Herbert
10 Report, ECF No. 35-2, at 24. Herbert's report concludes that defendant "violated industry
11 standards of care by their failure to accurately diagnose the source of the reported and depicted
12 'smoke' which was migrating into the cab of the subject Freightliner." *Id.* at 25. As noted above,
13 though Herbert draws his expertise from his employment in the trucking industry, not as a
14 mechanic, the weight to assign his testimony is for the jury to judge. Herbert's expert testimony
15 is sufficient to raise a genuine dispute of material fact at this stage regarding whether defendant's
16 technician violated the standard of care for an automobile repair business such as defendant.

17    Summary judgment of the breach of duty element of plaintiff's negligence claim is
18 not warranted.

19    2. Causation

20    "In a toxic tort case in California, a plaintiff must show both general causation,
21 which is that the substance at issue was capable of causing the injury alleged, and specific
22 causation, which is that the substance caused, or was a substantial factor in causing, the specific
23 plaintiff's injury." *Nelson v. Matrixx Initiatives, Inc.*, 592 F. App'x 591, 592 (9th Cir. 2015)
24 (internal quotation marks, citation omitted); *see also In re Hanford Nuclear Reservation Litig.*,
25 292 F.3d 1124, 1133–34 (9th Cir. 2002) ("In order to prevail on their claims, however, plaintiffs
26 must establish both generic and individual causation."). "General and specific causation must be
27 proven within a reasonable medical probability based upon competent expert testimony." *Nelson*,
28 592 F. App'x at 592 (internal quotation marks and citation omitted). Defendant's motion for

summary judgment challenges the sufficiency of plaintiff's evidence as to both general and specific causation.

### a.  General Causation

Defendant argues plaintiff is unable to show the toxin at issue is capable of causing plaintiff's injury, because (1) plaintiff cannot identify precisely what the toxin released into the truck was, (2) plaintiff has not offered adequate expert testimony connecting the toxin to plaintiff's injury, and (3) plaintiff has not identified a minimum exposure necessary to cause plaintiff's injury. *See generally* Reply.

In response to defendant's first argument, plaintiff's expert Paul Herbert provides testimony to suggest the smoke observed by plaintiff was diesel exhaust. *See* Herbert Decl. ¶ 10, ECF No. 35-2 ("The loose turbo diffuser clamp discovered by William Moran would have resulted in the leakage of diesel exhaust into the engine compartment which could migrate into the cab of the truck.").

As to the second argument, on general causation, plaintiff offers the testimony of Dr. Sobol, which the court has declined to exclude, which suggests plaintiff's injury was caused by diesel exhaust. *See* Opp'n at 7–8 (citing Sobol Decl. at ¶ 13 ("Ultimately, it is my medical opinion that Ms. Shrader's COPD was exacerbated by the exposure to diesel exhaust and diesel particulate matter."). Defendant's toxicologist testifies that plaintiff cannot establish general causation, because "[n]either diesel exhaust nor diesel fuel is recognized by the medical and scientific communities as causing respiratory tract infections including pneumonia," and plaintiff's experts have not established the level and duration of plaintiff's exposure. Mot. at 16–17 (citing Fedoruk Decl. ¶¶ 8, 16, 18, ECF No. 27-15). However, Dr. Sobol produced a thorough report, which reviews several scientific studies and concludes diesel exhaust exposure can render lungs more susceptible to pneumonia. Sobol Report at 47–50. Dr. Sobol's expert testimony, with Mr. Herbert's as a foundation, is sufficient to create a genuine factual dispute regarding whether the toxins resealed into the truck (diesel exhaust) can cause respiratory tract infections like the pneumonia suffered by plaintiff.

/////

As to the third argument, that plaintiff has not identified a minimum toxic dose of diesel fumes, the Ninth Circuit has held such information is not necessary to demonstrate that a substance is toxic. *Clausen*, 339 F.3d at 1059. It is sufficient for plaintiff's expert to rely on a "learned treatise" or a "published article in a reputable scientific journal" to support the general finding that exposure to the toxin may cause plaintiff's injury, and to "explain precisely how they went about reaching their conclusions[.]" *Id.* at 1056.

b. Specific Causation

Defendant argues plaintiff has failed to offer competent evidence showing specific causation, namely because plaintiff has not offered evidence to show plaintiff was exposed to a toxic amount of diesel fumes. Defendant's argument is foreclosed by the court's ruling on defendant's motion to exclude Dr. Sobol's report, as Dr. Sobol's expert opinion is based on the "differential diagnosis" methodology, a form endorsed by the Ninth Circuit.

Defendant argues plaintiff can offer no admissible evidence showing the diesel fumes to which plaintiff was allegedly exposed were a substantial cause of her injury. Mot. at 16. Defendant offers testimony from two of its own experts: a toxicologist and a pulmonologist, who both support defendant's argument that the diesel fumes could not have, and did not in fact, cause plaintiff's respiratory illness. Mot. at 16–17 (citing Fedoruk Decl. & Schenker Decl., ECF No. 27-7). Defendant's pulmonologist testifies that "diesel exhaust and diesel fumes are simply not known by any human studies to cause pneumonia" and, even if they did, "specific causation cannot be established because Plaintiff stated at deposition she cannot even estimate the number of hours she was exposed to the alleged toxins." Mot. at 17 (citing Schenker Decl. ¶¶ 6–7).

However, as noted, Dr. Sobol's report relies on plaintiff's testimony regarding her exposure, her medical history, Dr. Sobol's examination of plaintiff and scientific studies linking diesel fumes to respiratory symptoms like plaintiff's. See Sobol Report at 17, 45–46, 48–49. As also reviewed above, he concludes:

> The description and sequence of [the drive and plaintiff's subsequent illness] is such as to render it likely that the fumes, smoke, and particulate matter that she was exposed to in the course of her driving in early December rendered her already compromised pulmonary

> system more susceptible to the eventual respiratory failure and collapse which occurred on 12/6/15 specifically as a result of exposure to diesel fuel fumes and diesel exhaust fumes. . . . It appears likely or at least more likely than not, that the exposure to the apparent heavy concentration of exhaust which Ms. Shrader experienced in the cab of her truck, at least up to 12/2/15, rendered her lungs more susceptible to the occurrence of infection with H. influenzae, which resulted in the H. influenzae pneumonia which she subsequently developed within the next several days, as well as worsening of her chronic obstructive pulmonary disease, thus leading to her respiratory collapse and requirement for hospitalization on 12/6/15.

*Id.* at 48–49.

As to specific causation, Dr. Sobol concludes plaintiff's "COPD was exacerbated by the exposure to diesel exhaust and diesel particulate matter." Sobol Decl. ¶ 13. The court finds this is sufficient to create a factual issue as to causation that is the jury's to resolve.

Summary judgment on the causation element of negligence is not warranted.

V.      CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

1. Defendant's motion to exclude or strike the testimony of Dr. Sobol and Dr. Klassen is DENIED;

2. In light of the concerns raised in the motion to exclude or strike, plaintiff SHALL take all actions necessary to come into compliance with Rule 26(a)(2)(B) by working with defendant's counsel to schedule a deposition of Dr. Sobol, limited to 4 hours, with a deposition date set within 14 days;

3. Within 21 days, the parties SHALL file a joint status report on the subject, as described herein;

4. Defendant's motion to exclude the testimony of Dr. Sobol under *Daubert* is DENIED without prejudice;

5. Defendant's objection to Dr. Kleinman's calculations offered in plaintiff's opposition to the motion for summary judgment is SUSTAINED for the purposes of resolving the motion for summary judgment only; and

6.   Defendant's motion for summary judgment is DENIED.

The final pretrial conference for this case is hereby scheduled for **Friday, November 6, 2020** at 10:00 a.m. in Courtroom 3.  This order resolves ECF Nos. 25, 27 and 28.

IT IS SO ORDERED.

DATED:  August 31, 2020.

CHIEF UNITED STATES DISTRICT JUDGE